Opinion issued March 29, 2007




 




In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00817-CV






GCC CONSTRUCTORS, INC., AND MANUEL A. GARCIA, Appellants


V.


AMERICAN HORIZON CONCRETE, INC., Appellee






On Appeal from the County Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 785443






MEMORANDUM OPINION This case involves competing claims for breach of a construction subcontract. 
The subcontractor appellee, American Horizon Concrete, Inc. (American Horizon),
sued appellant, GCC Construction, Inc. (GCC), claiming breach of the contract for
insufficient payment and fraud, whereupon GCC asserted a counterclaim for damages
arising out of American Horizon's having abandoned the project. The case was tried
to the court, which entered a judgment awarding damages and attorney's fees to
American Horizon and ordered that GCC take nothing on its counterclaim, but did not
file and was not asked to file findings of fact and conclusions of law. GCC brings
three issues that present legal and factual challenges to the sufficiency of the evidence
to support the judgment. (1) We affirm. 

Background


 The general contractor for a construction project at the Clear Creek Community
Church in League City entered into a subcontract with GCC for the project. On April
2, 2001, GCC entered into a $175,000 subcontract (the agreement) with American
Horizon for "concrete work" that included both materials and manpower. Principals
of American Horizon and GCC signed the agreement and each of its three exhibits,
which detailed specifications for the project. 

 Under the payment system between the parties, GCC received American
Horizon's monthly invoices, which indicated work done, with degree of completion
indicated by percentages. GCC would then submit its own invoices, which also
indicated work done and percentage of completion, to the general contractor. The
agreement specified that payment to American Horizon was "due within ten (10)
working days following receipt of payment" from the general contractor to GCC. The
agreement provided that time was of the essence for the project, but the same
provision envisioned that GCC could "reasonably" amend the work schedule from
time to time. The agreement did not specify a completion date or impose a work
schedule. It is undisputed that American Horizon abandoned the project on
November 5, 2001, and that rain impeded progress on the concrete work. 

 American Horizon's verified pleadings against GCC and its president, Manuel
A. Garcia, (2) allege that American Horizon provided concrete services to GCC on
account, as detailed in independently verified documents for the account, which
American Horizon incorporated into its petition. See Tex. R. Civ. P. 185 ("Suit on
Account"). American Horizon claimed that payments due on September 25, October
26, and January 9, 2001 were not paid, and that $70,051.49 was due on the account
after allowing all offsets, credits, and payments. See id. American Horizon also
alleged that, from about May to September 2001, GCC certifications to the general
contractor, which sought disbursements for American Horizon, misrepresented the
percentages of work that American Horizon had completed, by understating the
percentage, for GCC's own records, while overstating the percentage to the general
contractor. American Horizon claimed that GCC's actions fraudulently enabled GCC
to receive and retain funds that were due to American Horizon, but were not paid. In
addition to breach of contract, American Horizon stated claims of fraud, breach of
fiduciary duty, breach of the agreement by GCC that excused American Horizon's
performance, recovery in quantum meruit, and attorney's fees and costs. 

 GCC filed a verified denial of the account, a general denial, and a counterclaim
asserting that American Horizon had breached the agreement by performing only
partially and had provided defective performance by not providing adequate
manpower, not performing the work properly and timely, and by voluntarily
abandoning the project. GCC claimed that it had to hire others to complete American
Horizon's work and incurred additional overhead, which warranted damages of
$93,539.21. GCC also sought $5,000 in attorney's fees. 

 At midpoint during the trial, the trial court ruled that GCC had breached the
agreement with American Horizon and that American Horizon had not incurred any
liability for damages to GCC for breach of the agreement when it abandoned the
project. But, the trial court also ruled that GCC was entitled to more offsets and
credits than American Horizon had acknowledged in its pleadings. The remainder of
the trial concerned calculation of the offsets, based on testimony by both parties'
principals and argument by counsel. The record confirms that determination of the
offsets and credits was complicated by American Horizon's and GCC's accounting
measures, which differed widely. 

 In rendering judgment in favor of American Horizon, the trial court awarded
$40,000 as damages, which accounts for approximately $30,000 in offsets and credits
due to GCC, $10,000 for trial-court attorney's fees, and contingent attorney's fees for
appeal. (3) GCC moved for a new trial, but did not prevail and thereafter posted a
supersedeas bond pending this appeal.

 Standard of Review


 The record on appeal contains the reporter's record of the bench trial, but no
party requested or proposed postjudgment findings under rule 296, despite the trial
court's offer to comply with any request. A request for findings of fact and
conclusions of law is not required to question the sufficiency of the evidence. Pruet
v. Coastal States Trading, Inc., 715 S.W.2d 702, 704 (Tex. App.--Houston [1st Dist.]
1986, no writ). When there are no findings of fact and conclusions of law, however,
we may infer that the trial court made all the findings necessary to support its
judgment. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002);
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). We presume, therefore, that
the trial court found all questions of fact in support of the judgment, and we must
affirm the judgment if it can be upheld on any legal basis supported by the pleadings
and the evidence. See Point Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex.
1987); Worford, 801 S.W.2d at 109; Fair Deal Auto Sales v. Brantley, 24 S.W.3d
543, 546 (Tex. App.--Houston [1st Dist.] 2000, no pet.). Because the record includes
the reporter's record, the trial court's implied findings of fact may be challenged in
this Court for legal and factual sufficiency, BMC Software Belgium, 83 S.W.3d at
795, under the same standards that govern challenges to a jury's findings, but must
show that the judgment of the court below cannot be sustained by any theory raised
by the evidence. See Fair Deal Auto Sales, 24 S.W.3d at 546. 

 Under the legal-sufficiency standard, we must credit evidence that supports the
judgment if reasonable jurors could and disregard contrary evidence unless
reasonable jurors could not. See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). If the evidence falls within the zone of reasonable disagreement, we may not
invade the fact-finding role of the trial court, who alone determines the credibility of
the witnesses, the weight to give their testimony, and whether to accept or reject all
or any part of that testimony. See id. at 822. Unless "there is no favorable evidence
. . . or if contrary evidence renders supporting evidence incompetent . . . or
conclusively establishes the opposite," we must affirm. See id. 810-11. In
determining factual sufficiency, this Court weighs all the evidence, both supporting
and conflicting, and may set the finding aside only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Fair Deal Auto Sales, 24 S.W.3d at
546. 

Analysis


 By rejecting GCC's counterclaim and awarding damages of $40,000 and
attorney's fees to American Horizon, the trial court concluded, as a matter of law, that
GCC breached the agreement with American Horizon and found, as a matter of fact,
that $40,000 in damages was due to American Horizon for concrete and labor
provided on the project until American Horizon stopped performance in November
2002. By awarding only $40,000, however, as apposed to the $70,051.49 that
American Horizon requested as damages, the trial court made the factual calculation
that GCC was entitled to $30,051.49 as credits or offsets to American Horizon's
damages. 

 In its first two issues, GCC contends that the evidence "overwhelmingly
establishes" that (1) GCC paid American Horizon in accordance with the agreement
and that (2) American Horizon abandoned the construction project and failed to
complete performance. These issues present challenges to the trial court's failure to
rule in GCC's favor on its counterclaim that American Horizon, and not GCC,
breached the agreement. In a third issue, GCC contends that it established its right
to recover on the counterclaim as a matter of law. GCC thus contends that it did not
breach the agreement, but that American Horizon did. 

 Whether a party to a contract has breached the contract is a question of law for
the court, which determines as a matter of law what the contract requires of the
parties. See Meek v. Bishop Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex.
App.--Houston [14th Dist.] 1996, writ denied). When the terms of a contract are
clear and unambiguous, and the facts concerning breach or performance are
undisputed or conclusively established, the trial court decides, as a matter of law,
whether the facts show performance or breach. Id. Resolution by the fact-finder is
appropriate only to resolve underlying factual disputes that pertain to the alleged
breach, but not the breach itself. See id. Material breach by one party to a contract
can excuse the other party from any obligation to perform and is generally a question
of fact. See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex.
2004) (adopting factors of Restatement (Second) of Contracts § 241(a) (1981),
relating to materiality of breach); see also 2 Comm. on Pattern Jury Charges,
State Bar of Tex., Tex. Pattern Jury Charges PJC 101.2 (2005-2006 ed.)
(tracking Restatement factors adopted by supreme court in Mustang Pipeline to guide
fact finder in determining materiality of breach). 

 In its second issue, GCC contends that the evidence overwhelmingly
establishes that American Horizon abandoned the work project without completing
performance. In its third issue, GCC contends that the supreme court's interpretation
of the construction contract in Mustang Pipeline compels the conclusion that
American Horizon (1) breached the agreement in this case, which (2) excused GCC
from any financial obligation to American Horizon. We address these issues together.

 In Mustang Pipeline, a pipeline owner, Mustang, had contracted with Driver
to construct 100 miles of a 200-mile pipeline. As with the agreement at issue in this
case, Driver and Mustang contemplated that time was of the essence. In contrast to
this case, however, timely completion of the pipeline by a certain date was crucial in
Mustang Pipeline. See id., 134 S.W.3d at 196. In this case, time was but one
provision of the agreement and only one of several factors addressed at trial. Even
at the bidding stage, Mustang and Driver contemplated that completion of the project
would be "no later than" a specific date, and Driver increased its initial bid because
of that requirement. Id. In further contrast to this case, the contract imposed a work
schedule of fourteen weeks, ninety-eight-days, seven days a week, and eleven
working hours daily. Id. at 196-97. 

 Though Driver claimed that extensive rains caused delay and attempted to
renegotiate the contract to obtain additional time, the specifics of the contract
addressed means of protecting not only crews working in the rain, but also the
pipeline welds, and thus contemplated that at least some work be done in inclement,
rainy weather. Id. at 197. When Driver stopped work after fifty-eight days and later
indicated that it was not ready to resume work, Mustang declared Driver in default. 
Id. at 196. Because Driver's timely performance was "essential," and Driver
undisputedly did not perform timely, the supreme court ruled that the materiality of
Driver's breach was a question of law that did not require resolution by the trier of
fact. See id., 134 S.W.3d at 196, 199. 

 The circumstances of this case demonstrate that American Horizon's timeliness
was but one of several factors that the parties disputed. Despite the stated
requirement in Article 8 of the agreement that time was "of the essence," the same
provision envisioned that GCC would set and, if need be, revise the work schedule. 
The agreement neither stated a completion date, nor imposed a work schedule. At
trial, American Horizon's principal acknowledged GCC's complaints about slow
progress in August, but explained that GCC wanted American Horizon to continue
on the project. On that basis, he agreed to hire and did hire more workers, but noted
that this increased his expenses. 

 Of the many problems associated with project, GCC attributed only 30 percent
to American Horizon, faulted the general contractor for the remainder, agreed that
rain shut down work on 31 days between June and October, and stipulated that the
general contractor--not GCC or American Horizon--made the decision to close the
worksite. Though American Horizon's principal conceded that his company left the
job on November 6, 2001, his reason given was that he was either not being paid or
was underpaid. And though he provided the additional manpower that GCC
requested, the principal stated that GCC still wanted expedited work, despite not
paying American Horizon for "two draws," that he had to pay his workers, and that
he did not want to "throw good money after bad." 

 In contrast to the undisputed factors that warranted determination of materiality
of breach as a matter of law in Mustang Pipeline, the contentions of the parties in this
case and the evidence they submitted to the trial court required that the court resolve
their factually disputed allegations concerning the degree to which GCC actually
required timely completion of the project, in addition to the degree to which delay
could be attributed to American Horizon. See id., 134 S.W.3d at 196-97;
Herndandez, 875 S.W.2d at 693 & n.2. Having reviewed the record of this case and
contrasted it with the circumstances that warranted the supreme court's ruling in
Mustang Pipeline, we hold that the record did not permit the trial court to determine,
as a matter of law, the materiality of American Horizon's failure to complete the work
on a timely basis as a matter of law. 

 We overrule GCC's third issue. 

 After inferring all facts needed to support the trial court's judgment in favor of
American Horizon, in accordance with BMC Software Belgium, 83 S.W.3d at 795 and 
City of Keller, 168 S.W.3d at 810-11, 822, 827, we conclude that the evidence falls
within the zone of reasonable disagreement and supports the trial court's resolution
of the conflicting evidence by impliedly finding that GCC, and not American
Horizon, materially breached the parties' agreement. We further conclude, after
reviewing all the evidence, that the great weight of the evidence is not so contrary to
the trial court's implied findings favoring American Horizon that the trial court's
failure to find in favor of GCC on its counterclaim is clearly wrong and manifestly
unjust. See Cain, 709 S.W.2d at 176; Fair Deal Auto Sales, 24 S.W.3d at 546. 

 Accordingly, we reject GCC's contention, in its second issue, that the evidence
"overwhelming establishes" that American Horizon materially breached the
agreement with GCC, such that GCC would be excused from the performance
required by the judgment granting $40,000 in damages to American Horizon. 

 We overrule GCC's second issue. 

 The same reasoning applies to defeat GCC's first issue, in which it contends
that the evidence overwhelming establishes that GCC paid American Horizon in
accordance with the agreement. Viewed in accordance with BMC Software Belgium,
83 S.W.3d at 795 and City of Keller, 168 S.W.3d at 810-11, 822, 827, the record
shows that, at GCC's request, American Horizon added personnel, which increased
its expenses while GCC was either not paying or was underpaying American Horizon,
and that American Horizon abandoned the construction project for that reason. We
defer to the trial court's decision to credit this version of the disputed facts of this
case as presented by American Horizon. Because this evidence supports the
judgment and falls within the zone of reasonable disagreement, we cannot say that the
evidence overwhelming establishes the contrary proposition presented by GCC's
issue. We further hold, after reviewing all the evidence, that the great weight of the
evidence is not so contrary to the trial court's implied findings favoring American
Horizon that the trial court's failure to find in favor of GCC on its claim that it paid
American Horizon in accordance with the agreement is clearly wrong and manifestly
unjust. See Cain, 709 S.W.2d at 176; Fair Deal Auto Sales, 24 S.W.3d at 546. 

 We overrule GCC's first issue. 

Conclusion


 We affirm the judgment of the trial court.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.

1. American Horizon has not filed an appellee's brief. 
2. On June 23, 2005, this Court granted the voluntary motion to dismiss filed by
appellant, Manuel A Garcia, who is president of GCC. 
3. In addition, the trial court ordered that American Horizon take nothing by its
counterclaim against GCC's president, Manuel Garcia, and that GCC take nothing by
its counterclaim against American Horizon.