Opinion issued August 16, 2007 




















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00824-CV

____________


USAA COUNTY MUTUAL INSURANCE COMPANY, Appellant


V.


HAYDEN P. COOK, Appellee






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 2005-21463






O P I N I O N

 Appellant, USAA County Mutual Insurance Company ("USAA"), challenges
the trial court's judgment entered, after a jury trial, in favor of appellee, Hayden P.
Cook, in Cook's suit for breach of contract, breach of the duty of good faith and fair
dealing, violation of articles 21.21 and 21.55 of the Texas Insurance Code, (1) and
attorney's fees. USAA brings nine issues for our review. It contends that the trial
court erred in denying its motion for directed verdict and, alternatively, its motion for
judgment notwithstanding the verdict, "based on Mr. Cook's judicial admissions and
the terms of the insurance policy" as "the accident was caused by a collision, a
coverage not purchased by Mr. Cook"; the evidence is legally and factually
insufficient to support the jury's finding that "the accident was the result of
vandalism"; the trial court erred in admitting evidence of vandalism; and, because "no
coverage was owed and no breach of contract established, all of Mr. Cook's extra-contractual claims and claims for attorney's fees fail as a matter of law." USAA also
contends that the evidence is legally and factually insufficient to support the jury's
finding that USAA breached its extra-contractual duties to Cook "under the Texas
Insurance Code or the common law for breach of the duty of good faith and fair
dealing"; the jury's findings that "USAA's failure to comply with the insurance
policy and its duty of good faith and fair dealing, respectively, were not excused, are
wholly unsupported by the great weight of the evidence"; and the evidence is
factually insufficient to support the jury's award of attorney's fees.

 We affirm.

Factual and Procedural Background

 At trial, Cook testified that after purchasing his 1998 Volkswagon Jetta in June
2004, he called USAA and purchased an insurance policy. The original version of
the declarations page of the policy stated that the six-month policy was issued on June
8, 2004. An amended declarations page, dated June 25, 2004, demonstrates that in
the interim, Cook dropped several coverages, but reflects that Cook retained coverage
under "Part A--Liability" for "Bodily Injury" and "Property Damage" and under
"Part D--Damage to Your Auto" for "Other than Coll[ision] Loss." Cook paid
$70.55 for a six-month term for "other than collision loss" coverage, with a $200
deductible.

 Cook further testified that, while looking for a job in Washington, D.C., he and
some friends took a break and he drove them to Atlanta, Georgia, to attend a baseball
game. On October 8, 2004, on their way back to Washington, D.C., they stopped for
lunch at a restaurant in Fayetteville, North Carolina, and Cook parallel parked his car
approximately two feet from the rear of a very large sports utility vehicle ("SUV"). 
Cook and his friends then went into the restaurant and, about forty-five minutes later,
they returned to find that Cook's car had been damaged. The hood was "bent up,"
there was damage to the grill, and the car had been pushed back fifteen feet, no longer
in the parking spot where Cook had originally parked it. When he initially parallel
parked his car, Cook put the transmission in park. The large SUV in the space
immediately in front of his car faced the same direction, and another car was parked
right in front of the SUV. Cook explained that the parking lot layout was extremely
confined. On one side of the parked cars, there was a three-inch curb with grass,
trees, and bushes. When Cook returned to his car, he found that the transmission to
his car remained in park, but the car had still been moved back fifteen feet, roughly
a full car length. The impact to the hood of the car showed that it was a "direct head-on collision" and not from the side. Only the front grill and hood of the car were
damaged. The SUV previously parked in front of Cook's car was no longer there, but
there was still a car in the space in front of where the SUV had been parked. A black
mark on the top portion of the bumper of Cook's car indicated that the mark was
made from a vehicle with a taller bumper, such as the SUV.

 After Cook and his friends took note of the damage, they asked around for
witnesses, but no one saw what caused the damage. The group of friends noticed
video surveillance cameras near the restaurant, but learned that the cameras were only
decoys. They called the local police department and, at the scene, told an officer what
happened and that there were no witnesses to the incident.

 After returning to Washington, D.C., Cook read his insurance policy. Part D
of the policy states,

A. We will pay for direct and accidental loss to your covered auto,
including its equipment less any applicable deduction shown in
the Declarations. However, we will pay for loss caused by
collision only if the Declarations indicate that Collision Coverage
is provided.


B. "Collision" means the upset, or collision with another object of
your covered auto. However, loss caused by the following are
not considered "collision":


1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.


If breakage of glass is caused by a collision or if loss is caused by
contact with a bird or animal, you may elect to have it considered a loss
caused by collision.


The policy does not define the term "vandalism."

 Based on his reading of the policy, Cook thought that the damage to his car was
caused by "vandalism," and, on October 21, 2004, Cook called USAA to make a
claim under the policy. Cook took his car to be inspected by Larry O'Hara, whom
USAA had requested, and he estimated that it would cost $2,126.56 to repair the
damage. USAA subsequently denied Cook's claim for damages on the ground that
the damage to his automobile was not covered by the policy.

 Tracy Huggins, a claims adjuster for USAA, testified that USAA denied the
claim because "it was a collision loss and unfortunately, there was no collision
coverage on the policy for this loss." Huggins explained that she tried to get all of
the information available. In her view, Cook only told her the facts that he wanted
her to know. For example, Cook did not tell her whether there were any passengers
present in his car. Huggins noted that although most people call in their claim within
one or two days of an incident, Cook waited approximately two weeks to report his
claim.

 Huggins further testified that Cook reported the loss as "vandalism" and that
"vandalism is covered under comprehensive coverage." In her conversation with
Cook, his "main point was that because the car was moved back 15 feet, it was
obviously struck in a willful, intentional way." When Huggins asked Cook what
caused the damage to the car, he told her, "I don't know." Huggins put Cook "on
notice that [because] he didn't carry collision coverage on the policy, it didn't look
like we were going to be able to issue payment for his damage." Cook "understood
there was no collision [coverage] but he persisted on having it covered under
comprehensive."

 At the conclusion of the trial, the jury found that USAA failed to comply with
the insurance policy, found that the failure to comply with the policy was not
excused, and awarded actual damages to Cook in the amount of $1,926.56. The jury
also found that USAA failed to comply with its duty of good faith and fair dealing,
found that the failure to comply with the duty of good faith and fair dealing was not
excused, and awarded damages of $1,926.56. The jury further found that USAA
engaged in unfair and deceptive acts or practices and awarded damages of $1,926.56,
but found that USAA did not engage in such conduct knowingly. Finally, the jury
awarded reasonable and necessary attorney's fees to Cook in the amount of $23,310
for preparation and trial, $15,000 for an appeal to the Texas Courts of Appeals, and
$15,000 for an appeal to the Texas Supreme Court. The trial court entered judgment
awarding Cook $1,926.56 plus pre-judgment and post-judgment interest, and the
attorney's fees.

Legal and Factual Sufficiency In its first issue, USAA argues that the trial court erred in denying its motion
for directed verdict and, alternatively, its motion for judgment notwithstanding the
verdict, "based on Mr. Cook's judicial admissions and the terms of the insurance
policy because the accident was caused by a collision, a coverage not purchased by
Mr. Cook." In its third and fourth issues, USAA argues that the evidence is legally
and factually insufficient to support the jury's finding that the damage to Cook's car
was caused by vandalism and that USAA breached its policy because at most, "Cook
offered evidence that his car was damaged and pushed back fifteen feet." In its eighth
issue, USAA argues that the jury's finding that USAA was not excused from
complying with the policy "based on Mr. Cook's conduct" is against the great weight
and preponderance of the evidence.

Standard of Review

 We will sustain a legal sufficiency or "no-evidence" challenge if the record
shows one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence offered
to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact.
City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal
sufficiency review of the evidence, a court must consider evidence in the light most
favorable to the verdict and indulge every reasonable inference that would support
it. Id. at 822. If the evidence allows only one inference, neither jurors nor the
reviewing court may disregard it. Id. However, if the evidence at trial would enable
reasonable and fair-minded people to differ in their conclusions, then jurors must be
allowed to do so. Id. A reviewing court cannot substitute its judgment for that of the
trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement.
 Id. 

 Our review of the factual sufficiency of the evidence requires us to consider,
weigh, and examine all of the evidence that supports or contradicts the jury's
determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We may set aside the verdict only if the evidence that supports the jury's finding is
so contrary to the overwhelming weight of the evidence as to be clearly wrong or
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

Terms of the Policy

 In its first issue, USAA contends that this case should have been "resolved on
the policy coverages Mr. Cook, himself chose to purchase," asserting that in his
answers to requests for admission, and at trial, Cook admitted that the damage was
the result of a "collision" and that the policy issued by USAA did not provide
collision coverage.

 As noted above, the amended declarations page of the policy provides that
Cook purchased coverage under "Part A--Liability" for "Bodily Injury" and
"Property Damage." Cook also purchased coverage under "Part D--Damage to Your
Auto" for "Other than Coll[ision] Loss," which contained a $200 deductible. 
Although the policy provides that USAA "will pay for direct and accidental loss to
your covered auto, including its equipment less any applicable deduction shown in
the Declarations," the policy does not further describe or define what constitutes an
"other than collision loss."

 In its briefing, USAA asserts that Cook could "treat the loss as either a
collision or non-collision loss" only "if the loss resulted from damages caused by a
bird or animal" and that the policy "did not permit an insured to treat vandalism as
either vandalism or collision." USAA argues that "the policy, as a matter of law,
quite simply said that vandalism was not a covered collision loss" and, if interpreted
otherwise, "coverage would equally be owed for collisions involving missiles, falling
objects, explosion, flood, or riot." USAA further argues that such an "interpretation
of the insurance policy is patently absurd." In other words, the ten listed items,
including vandalism, "were exclusions to collision coverage not grants of coverage." 
However, at oral argument, USAA abandoned this argument and conceded that a loss
caused by vandalism would in fact be covered under Cook's policy. USAA also
agreed that one could use a car to intentionally collide with another car to cause
damage, resulting in an act of vandalism.

 Cook did testify that he believed that the damage to his car was the result of a
large SUV "colliding" with the front-end of his car. However, our examination of the
insurance policy in question does not reveal that the terms "collision" and
"vandalism" are mutually exclusive. It is undisputed that Cook did not purchase
"collision" coverage, which the policy defines as "the upset, or collision with another
object of your covered auto." However, the policy specifically provides that loss
caused by "malicious mischief or vandalism" is not considered a "collision."

 In its charge, the trial court instructed the jury that "vandalism" means "the
willful or malicious destruction of public or private property" and that "malice"
means "the intent, with or without cause, or reason, to commit an unlawful act that
will result in injury to another or others." "Vandalism" is commonly defined as an
"action involving deliberate destruction of or damage to public or private property." 
The New Oxford American Dictionary 1868 (1st ed. 2001). "Collision" is
defined as "an instance of one moving object or person striking violently against
another." Id. at 336. In most instances, acts of vandalism involve causing an object,
be it a baseball bat or a car, to collide with another object to deliberately cause
damage. Thus, the real issue here is whether the damage to Cook's car was caused
by a deliberate as opposed to a negligent act.

 As discussed more fully below, Cook presented evidence that the damage
caused to his car was the result of a willful or malicious act, not a negligent act. 
Accordingly, we hold that Cook's "judicial admissions and the terms of the insurance
policy" do not establish, as a matter of law, that the damage to Cook's car resulted
from a non-covered "collision" and not from "vandalism."

 We overrule USAA's first issue.

Result of "Vandalism"

 In its third and fourth issues, in support of its argument that the evidence is
legally and factually insufficient to support the jury's finding that the damage to
Cook's car was the result of vandalism, USAA asserts that Cook "could not confirm
that the SUV he originally saw caused the collision, or that the car originally parked
in front of the SUV was the same" and that the "police reported it as a hit and run." 
It also asserts that Cook's "evidence consisted o[f] his lone surmise, and a remarkably
unreasonable surmise, that a person in a large, and presumably expensive, SUV,
would intentionally ram his vehicle into [Cook's] Jetta for fun or sport." USAA also
argues that because the "competing inferences" of a negligent hit-and-run and an act
of intentional vandalism are "equal inferences," the jury's finding that USAA failed
to comply with the insurance policy cannot survive a sufficiency challenge.

 USAA directs our attention to Rich v. United Mutual Fire Insurance Company
as persuasive authority. See 102 N.E.2d 431 (Mass. 1951). In Rich, evidence was
presented that the insured parked his automobile in front of his house with the
automobile headed downgrade, its left front wheel turned up against the curb, and the
emergency break activated. Id. at 432. Approximately two and one-half hours later,
the insured heard a door slam and was told by a young boy that the automobile was
at the bottom of the hill smashed against a tree. Id. The automobile was found in a
damaged condition down the hill with the brake activated, against a tree,
approximately three-hundred feet from where it had been parked. Id. The insured's
policy provided that the insurer agreed to pay for loss of or damage to the automobile
"except loss caused by collision of the automobile with another object." Id. The
policy also provided that "loss caused by . . . theft . . . [or] vandalism . . . shall not be
deemed loss caused by collision." Id.

 After stating that the terms "theft" and "vandalism" were to be given the
meaning attributed to them in common use, the court opined that vandalism, as used
in the policy in question, referred to "such wanton and malicious acts as are intended
to damage or destroy the property insured." Id. The court held that the evidence
would not warrant a finding by the jury that the insured's automobile collided with
the tree by reason of either theft or vandalism. Id. The court reasoned that "[i]t could
be found that the automobile had been caused to move from its position by reason of
human intervention," but "there was no greater probability that the force which
caused the automobile to move was applied intentionally by a thief of [sic] vandal
than, for example, by some negligent act of the operator of another automobile or the
act of a child in play." Id. Thus, the cause of the damage to the automobile would
be a "matter of speculation, conjecture, and surmise." Id. 

 Here, although there were no eyewitnesses to the incident in question, Cook
presented evidence that upon entering the restaurant, he left the transmission in park;
a large SUV was parallel parked approximately two feet in front of Cook's car, with
the SUV's rear bumper facing Cook's front bumper; another car was parallel parked
immediately in front of the SUV; and the parking lot was very confined. After
returning to his car approximately forty-five minutes later, Cook observed that his car
was moved fifteen feet from where he initially parked the car; the transmission was
still in park; the front grill and hood of Cook's car were damaged, a black mark was
above Cook's front bumper, a piece of plastic debris from Cook's car was on the
ground; and the damage to Cook's car appeared to have resulted from a "head-on"
impact. Also, Larry O'Hara, the USAA appraiser, told Cook that he did not feel that
the damage to Cook's car was "accidental."

 In the instant case, in contrast to Rich, the jury could have reasonably
concluded that, based on the dimensions of the parking lot, the driver of the SUV
parallel parked immediately in front of Cook's car willfully or maliciously caused the
damage to Cook's car by ramming the SUV into the car. Given the fact that Cook's
car, with the parking brake activated, was physically moved approximately fifteen
feet, no other conclusion appears reasonable. This evidence does not reveal "a single
vehicular collision" that was the result of negligence, as USAA contends, but rather
a deliberate act akin to road rage. As such, the occurrence of mere negligence or
accident cannot be equally inferred. Accordingly, we hold that the evidence is legally
and factually sufficient to support the jury's implied finding that the damage to
Cook's car was the result of vandalism and its express finding that USAA failed to
comply with the insurance policy.

 We overrule USAA's third and fourth issues.

Excuse from Performance

 In its eighth issue, USAA asserts that, under the policy, Cook owed a duty to
cooperate with USAA by promptly notifying USAA of how the incident occurred and
the names and addresses of any witnesses. USAA contends that Cook breached this
duty to cooperate by (1) concealing or otherwise making false representations "to
USAA in reporting his claim by never once mentioning the accident was the result
of a collision" and (2) not identifying "any of the men with him as potential witnesses
until his deposition was taken in this litigation, long after his [claim] was denied." 

 When a party attacks the factual sufficiency of an adverse finding on an issue
on which it has the burden of proof, it must demonstrate on appeal that the adverse
finding is against the great weight and preponderance of the evidence. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).

 It is a fundamental principle of contract law that when one party to a contract
commits a material breach of that contract, the other party is discharged or excused
from further performance. Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,
134 S.W.3d 195, 196 (Tex. 2004). However, an insured's actions will not operate to
discharge the insurer's obligations under the policy unless the insurer is actually
prejudiced or deprived of a valid defense by the actions of the insured. See McGuire
v. Commercial Union Ins. Co. of New York, 431 S.W.2d 347, 353 (Tex. 1968).

 Here, in a conclusory sentence, USAA alleges that it "was prejudiced by Mr.
Cook's breach." However, there is no evidence in the record and USAA provides no
guidance to this Court as to how it detrimentally relied on any alleged
misrepresentations made by Cook. In fact, this Court has held that there is legally and
factually sufficient evidence to support the jury's implied finding of "vandalism." 
Accordingly, we hold that the jury's finding that USAA was not excused based on
Cook's conduct is not against the great weight and preponderance of the evidence.

 We overrule USAA's eighth issue.

Erroneous Admission of Evidence

 In its second issue, USAA argues that, "based on Mr. Cook's judicial
admissions," the trial court erred in admitting evidence of vandalism. In response,
Cook asserts that "evidence of vandalism came in at trial without objection."

 Requests for admissions are governed by rule 198 of the Texas Rules of Civil
Procedure. See Tex. R. Civ. P. 198. In a pending action, a "matter admitted under
this rule is conclusively established as to the party making the admission unless the
court permits the party to withdraw or amend the admission." Tex. R. Civ. P. 198.3. 
An admission once admitted, deemed or otherwise, is a judicial admission, and a
party may not then introduce testimony to controvert it. Marshall v. Vise, 767 S.W.2d
699, 700 (Tex. 1989). However, a party relying upon an opponent's pleadings as
judicial admissions of fact must protect the record by objecting to the introduction of
controverting evidence and to the submission of any issue bearing on the facts
admitted. Id.; Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex. 1983). 
A party waives the right to rely upon an opponent's admissions unless objection is
made to the introduction of evidence contrary to those admissions. Marshall, 767
S.W.2d at 700.

 Here, USAA did not object to Cook's repeated testimony that the damage to
his car was the result of an act of "vandalism." Thus, USAA has waived its right to
rely upon any admissions which were controverted by testimony admitted at trial
without objection. See id.; Musick, 650 S.W.2d at 768-69.

 We overrule USAA's second issue.Attorney's Fees

 In its ninth issue, USAA argues that the jury's award of trial and appellate
attorney's fees in the amount of $23,310 and $30,000, (2) respectively, is excessive
because there is factually insufficient evidence that such fees were reasonable or
necessary.

 Factors that a factfinder should consider when determining the reasonableness
of a fee include: (1) the time and labor required, the novelty and difficulty of the
questions involved, and the skill required to perform the legal service properly; (2)
the likelihood that the acceptance of the particular employment will preclude other
employment by the lawyer; (3) the fee customarily charged in the locality for similar
legal services; (4) the amount involved and the results obtained; (5) the time
limitations imposed by the client or by the circumstances; (6) the nature and length
of the professional relationship with the client; (7) the experience, reputation, and
ability of the lawyer or lawyers performing the services; and (8) whether the fee is
fixed or contingent on results obtained or uncertainty of collection before the legal
services have been rendered. Arthur Andersen & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof'l Conduct 1.04). 
Attorney's fees must bear some reasonable relationship to the amount in controversy. 
Cordova v. Sw. Bell Yellow Pages, Inc., 148 S.W.3d 441, 448 (Tex. App.--El Paso
2004, no pet.). But, the amount of damages awarded is only one factor in determining
the reasonableness of a fee award. Id.

 At trial, in regard to attorney's fees, Tom Cook ("the senior Cook"), Hayden
Cook's attorney and father, testified that he moved to Houston in 1974 after
graduating from law school at the University of Texas and is licensed to practice law
in all state and federal courts in Texas. At the time of trial, he was retired, but
formerly was a partner at the law firm of Bracewell & Giuliani, where he practiced
civil litigation for twenty-nine years. The senior Cook's time log reflected that he
spent 127.4 hours working on the case prior to trial. He estimated, based on a three-day trial and the time associated with post-trial motions and hearings through the
entry of final judgment, twenty-eight hours for trial, but instructed the jury that he
now felt the trial would only take two days to complete, and therefore the jury should
subtract eight hours from the original twenty-eight hour estimate. The senior Cook
testified that for a case of this size, a reasonable rate was $150 per hour, as opposed
to the $400 per hour rate he charged at his former law firm. In addition, he estimated
the reasonable and necessary attorney's fees for him to handle an appeal to the Texas
Courts of Appeals at $15,000, and another $15,000 should the case be appealed to the
Texas Supreme Court. He also spent one hour, not reflected in his time log,
comparing Cook's policy to the language quoted by Tracy Huggins in her letter
denying coverage. The senior Cook further testified that "[m]ost of the time was
spent responding to motions that [USAA] filed with this Judge and [he] had to answer
all those various motions for summary judgment that were all denied."

 Here, Cook's attorney testified that he calculated his fees based upon a rate of
$150 per hour. Additionally, much of his time was spent preparing and responding
to requests for admissions and interrogatories, two depositions, USAA's motions for
summary judgment, directed verdict, judgment notwithstanding the verdict, and new
trial. Although USAA argues that the aggregate amount of attorney's fees sought is
excessive, it presented no evidence that a rate of $150 per hour for a Houston trial
attorney is unreasonable. Mindful that the case involved approximately a $2,000
claim under the policy and the amount awarded for attorney's fees greatly exceeds the
amount of actual damages, we cannot say, given the amount of time invested in the
case by Cook's attorney, that the attorney's fees awarded are excessive or
unreasonable. Accordingly, we hold that the evidence is factually sufficient to
support the jury's award of trial and appellate attorney's fees.

 We overrule USAA's ninth issue.

Extra-Contractual Claims

 In its fifth, sixth, and seventh issues, USAA argues that because no coverage
was owed to Cook, all of his "extra-contractual claims and claims for attorney's fees
fail as a matter of law" and that the evidence is legally and factually insufficient to
support the jury's finding "that USAA breached extra-contractual duties to Mr. Cook
under the Texas Insurance Code or the common law for the breach of the duty of
good faith and fair dealing." However, the jury did not award Cook any damages
above and beyond his actual damages of $1,926.56 for USAA's denial of his
insurance claim. Having held that the evidence is legally and factually sufficient to
support the jury's finding that USAA failed to comply with the insurance policy,
factually sufficient to support the jury's finding that USAA's failure to comply was
not excused, and factually sufficient to support its award of attorney's fees, we need
not reach USAA's fifth, sixth, and seventh issues. 

Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.
1. See Tex. Ins. Code Ann. arts. 21.21, 21.55, repealed by Act of May 22, 2003, 78th
Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current version
at Tex. Ins. Code Ann. §§ 541.001 et seq., 542.001 et seq. (Vernon Supp. 2006)).
2. The jury awarded $15,000 contingent on an appeal to the Texas Courts of Appeals,
and another $15,000 contingent on an appeal to the Texas Supreme Court.