MUSTANG PIPELINE COMPANY, INC., Petitioner,

v.

DRIVER PIPELINE COMPANY, INC., and Seaboard Surety Co., Respondents.

No. 02–0290.

Supreme Court of Texas.

April 23, 2004.

Thomas H. Buchanan, Buchanan & Kent, David James Bush, Christie Lynn Ryan, Buchanan Kent P.C., Ken W. Good, Kent Good & Anderson, P.C., Tyler, for petitioner.

Joe F. Canterbury Jr., David Surratt, Canterbury Stuber Elder Gooch & Surratt, Dallas, Kent Hance, Hance Scarborough Wright, LLP, Austin, John R. Mercy, Mercy Carter Tidwell & Elliott, L.L.P., Texarkana, E. Lee Parsley, E. Lee Parsley, P.C., Austin, Thomas John Ward, Perry Womack & Ward, Clifton L. Holmes, Holmes Law Office, Longview, Deborah J. Race, Ireland Carroll & Kelley, P.C., Tyler, for respondents.

PER CURIAM.

In this breach of contract case, both parties, Mustang Pipeline Co. (Mustang), and Driver Pipeline Co. (Driver), obtained favorable jury findings as to the other's breach of a pipeline construction contract. Mustang initially brought suit against Driver for Driver's failure to complete work in a timely manner. Driver counterclaimed for Mustang's wrongful termination of the contract. It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994). Furthermore, if it is clear the parties intend that time is of the essence to a contract, timely performance is essential to a party's right to require performance by the other party. *D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W.2d 379, 382 (Tex. App.-San Antonio 1992, no writ).

The court of appeals, in affirming the trial court, held that Mustang could not recover damages because Mustang failed to get a jury finding that Driver's breach was material. We hold that an express jury finding on the issue of materiality is not required when "time is of the essence." Because time was of the essence under the contract and Driver failed to timely perform, Mustang was thereafter excused from performance. We reverse in part and render judgment that Driver take nothing.

In January 1997, Mustang entered into a contract under which Driver was to construct the northern 100 miles of a 200 mile pipeline from Mont Belvieu to Longview, Texas. During the bidding process, Mustang stressed that time was of the essence and that the pipeline construction had to be completed no later than April 30, 1997. In response to this time demand, Driver increased its original bid by approximately ten percent, but was still awarded the contract. The parties agreed on a fourteen-week schedule, working eleven hours per day, seven days a week.

Driver contends that extensive rains delayed the project soon after work began. On March 3, 1997, Driver proposed shutting down pipeline construction until the weather improved. On March 5, Driver officially requested a thirty-day extension to the agreed completion date, citing adverse weather and safety concerns as the reason for the delay. At a meeting on March 6, Driver reiterated its intent to shut-down operations and wait for drier weather, and it proposed a new 161–day construction schedule.

Fifty-eight days into the ninety-eight day construction schedule, Driver had completed only fifteen miles of pipeline and suspended operations. The parties dispute whether Driver could have accomplished more during this time by using different equipment or reassigning crews to work on drier areas. The contract includes provisions explaining how the crews and pipeline welds could be protected while working in the rain, suggesting that the parties anticipated working despite at least some inclement weather. By March 17, Driver stated that it was still not ready to resume work on the pipeline, so Mustang's project engineer certified Driver to be in default under the contract. Mustang then contracted with Sunland Corporation to finish Driver's portion of the pipeline, which it completed in September 1997.

Mustang sued Driver for breach of contract to recover the cost of completion, lost profits, and attorney's fees. Driver countersued for breach of contract, alleging that Mustang wrongfully terminated the contract, and sought damages, lost profits and attorney's fees. In their respective answers, both parties raised the other's material breach as an affirmative defense.

The case was tried to a jury. At the close of trial, the following questions were included in the charge:

1) Did Driver Pipeline Company fail to comply with the contract it had with Mustang Pipeline Company?
2) Was Mustang Pipeline Company justified or not justified in terminating Driver Pipeline Company?
3) What sum of money, if any, if now paid in cash would fairly and reasonably compensate Mustang Pipeline Company for its damages, if any, that resulted from such failure to comply?
4) What sum of money would fairly and reasonably compensate Driver for its damages, if any, that resulted from Mustang's failure to comply with the Contract?

The jury found that Driver failed to comply with the terms of the contract but also found that Mustang was not justified in terminating the contract. It awarded Mustang $2,104,601 in damages for Driver's breach of contract and awarded Driver $2,515,958 in damages for Mustang's wrongful termination.

Both parties moved for judgment notwithstanding the verdict. Mustang asked the trial court to disregard the jury's finding that Mustang wrongfully terminated the contract and the damages awarded to Driver. Mustang contended that once the jury found that Driver breached the contract, it could not also find that Mustang wrongfully terminated the contract because a breaching party cannot subsequently enforce the contract. The trial court denied Mustang's motion. Driver's motion for judgment notwithstanding the verdict asked the trial court to disregard the jury's finding that Driver breached the contract and the damages awarded to Mustang. Driver argued there was no evidence of probative force to sustain the jury's answers on either the breach of contract or damages questions. The trial court refused to disregard the jury's finding that Driver breached the contract but granted Driver's motion to disregard Mustang's damage award. Thus, the trial court rendered judgment for Driver and awarded Driver actual damages, plus attorney's fees and interest.

Both parties appealed. Driver argued that the trial court erred by denying its request to impose a statutory mineral lien to protect its judgment. The court of appeals concluded that Driver did not adequately preserve the issue for review. 69 S.W.3d at 784. The need to protect Driver's right to recover was also rendered moot when Mustang filed a supersedeas

bond sufficient to cover the entire judgment. *Id.* Mustang raised several issues on appeal, arguing that: (1) the trial court erred by refusing to disregard the jury's answer to the wrongful termination question as immaterial; (2) there was legally and factually insufficient evidence to support the jury's wrongful termination finding and the claim was precluded by the contract's termination for convenience provision; (3) the trial court erred by disregarding the jury's answer about Mustang's damages; (4) the trial court improperly assessed attorney's fees; and (5) the trial court erred by not rendering judgment against Seaboard Surety, Driver's surety company.

The court of appeals affirmed the trial court's judgment. The court of appeals reasoned that the jury's finding of Driver's breach was relevant to Mustang's liability only if the breach was material. 69 S.W.3d at 789. The court of appeals concluded that whether a party's breach is material is a fact question, and, absent an express jury finding, the trial court was not required to treat the breach as material as a matter of law. *Id.* at 790. The court of appeals also concluded there was factually and legally sufficient evidence to support the jury's wrongful termination finding, and the contract's "termination for convenience" clause did not preclude Driver's claim because Mustang did not raise this issue in the trial court. *Id.*

In response to the trial court's decision to disregard the jury's damage award to Mustang, the court of appeals concluded that Mustang did not meet its burden to show its damages were reasonable and necessary. 69 S.W.3d at 787. The court of appeals noted that although Mustang provided substantial evidence of its expenses, the "weight of authority indicates that the mere evidence of amounts paid— without more—is no evidence that those amounts were reasonable." *Id.* Accordingly, the court of appeals affirmed the trial court's judgment. *Id.* at 791. Mustang petitioned this court for review, asking us to reverse the court of appeals' judgment and render judgment for Mustang, or in the alternative, grant a new trial.

First we must consider whether the trial court erred in denying Mustang's motion for judgment notwithstanding the verdict. Mustang argues that the jury's answer regarding Driver's breach rendered the jury's answer regarding Mustang's wrongful termination immaterial, because once a party has breached it cannot later sue on the contract. *See Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex.1990). Accordingly, Mustang contends that the trial court should have disregarded the jury's answer to the second question and granted its motion for judgment notwithstanding the verdict.

The court of appeals rejected Mustang's argument. It reasoned that because the jury question did not ask whether the breach was material, the trial court was not required to hold the breach material as a matter of law. 69 S.W.3d at 790. Thus, according to the court of appeals, the trial court did not err in overruling Mustang's motion for judgment notwithstanding the verdict.

The court of appeals was correct in holding that a party is released from further obligation under the contract only if the other party materially breached. However, we disagree with the court's requirement that Mustang obtain an express jury finding that Driver's breach was material. Texas Rule of Civil Procedure 277 mandates that a trial court "shall, whenever feasible, submit the cause upon broad-form questions." TEX.R. CIV. P. 277. The jury question regarding Driver's breach tracks the Texas Pattern Jury Charge language for the recommended breach of con-

tract question, asking "Did Driver Pipeline Company fail to comply with the contract it had with Mustang Pipeline Company?" COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES–BUSINESS, CONSUMER, EMPLOYMENT PJC 101.2 (2000) ("Did [defendant] fail to comply with the agreement?"). The jury answered yes.

■ The evidence presented at trial established that Driver's failure to comply was a material breach. The Restatement lists five circumstances significant in determining whether a failure to perform is material:

   (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

   (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

   (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

   (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;

   (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*See* RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981).

The Restatement also articulates circumstances that are significant in determining when a party's duties are discharged under a contract due to the other party's material breach. The relevant factors, in addition to those listed above, are:

   (1) the extent to which it reasonably appears to the injured party that delay may prevent or hinder him in making reasonable substitute arrangements.

   (2) the extent to which the agreement provides for performance without delay, but a material failure to perform or to offer to perform on a stated day does not of itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.

*See* RESTATEMENT (SECOND) OF CONTRACTS § 242 (1981).

The evidence presented established both that Driver's breach was material and that Mustang was discharged from its duties under the contract based on that breach. Evidence exists to prove, as a matter of law, that time was a material element of the contract. Driver placed an initial bid with Mustang in October 1996, but it increased its bid significantly in January 1997 after learning of the April 30 deadline. The contract specifically stated that "all time limits stated in the Contract are of the essence to the Contract," and the contract called for "100 percent completion of the pipeline system no later than April 30, 1997." In addition to the contract's emphasis on timely completion, it also required that "sufficient forces and equipment ... be furnished at all times to adequately perform work with ample margin for emergencies and unexpected events, to carry on the work at a sufficient rate of progress to ensure completion within the time specified in the Contract."

In late February 1997, when Mustang realized Driver was behind on the construction schedule, it asked for assurances from Driver that the work would be completed by the deadline. Although Driver had workers, equipment and supervision

on the job site, it accomplished only minimal pipeline construction. Mustang also requested a plan from Driver on how it would finish the project by the end of April. It recognized the unseasonably wet conditions, but offered suggestions to Driver about how it might expedite construction. The evidence indicates that Driver never provided a revised plan on how it would attempt to meet the construction schedule. When Mustang terminated the contract, it had approximately forty days before the April 30, 1997 deadline to complete construction on eighty-five miles of pipeline. Even the most ambitious of construction schedules would have great difficulty successfully meeting that deadline. At the point at which Mustang terminated the contract, there was virtually no chance that Driver would be able to cure its breach and complete the construction on time.

Based on this evidence, we hold that as a matter of law Driver committed a material breach. Mustang was thereafter discharged from its duties under the contract. Therefore, the trial court should have disregarded the jury's answer to the wrongful termination question and granted Mustang judgment notwithstanding the verdict.

These problems could have been avoided had the trial court submitted the breach of contract question disjunctively ("Did Driver Pipeline Company or Mustang Pipeline Company fail to comply with the parties' contract?") accompanied by an appropriate instruction directing the jury to decide who committed the first material breach. *See* TEX.R. CIV. P. 277 ("The court may submit a question disjunctively when it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists."); COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, EMPLOYMENT PJC 101.22 (2002). In the standard contract dispute, one party cancels the contract or refuses to pay due to alleged breaches by the other; in such circumstances, jurors will often find *both* parties failed to comply with the contract (as the jury did here) unless instructed that they must decide who committed the first material breach. *See Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex.1981) (default by one contracting party excuses performance by the other); *see also Lake LBJ Mun. Util. Dist. v. Coulson,* 692 S.W.2d 897, 908 (Tex. App.-Austin 1985), *rev'd on other grounds,* 734 S.W.2d 649 (Tex.1987) (suggesting disjunctive submission in such cases).

Mustang also argues that the trial court erred by granting Driver's motion for judgment notwithstanding the verdict and entering a judgment that did not award Mustang any damages. The jury found Mustang suffered $2,104,601 in damages as a result of Driver's failure to comply with the pipeline contract. However, Driver argued that Mustang's evidence and expert testimony were legally insufficient because there was no evidence presented to show the amount paid was reasonable and necessary. The trial court granted Driver's motion to disregard the jury's answer. The court of appeals affirmed, holding that although Mustang offered evidence to prove its damages, it presented no evidence that the costs were reasonable. 69 S.W.3d at 787.

The party seeking to recover the cost of completion in a breach of contract case has the burden to prove that the damages sought are reasonable. *See Dallas Ry. Terminal Co. v. Gossett,* 156 Tex. 252, 294 S.W.2d 377, 382 (1956); *GATX Tank Erection Corp. v. Tesoro Petroleum Corp.,* 693 S.W.2d 617, 619 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). Evidence of the amounts charged and paid, standing

alone, is no evidence that such payment was reasonable and necessary. *Gossett,* 294 S.W.2d at 382–83.

■ Mustang directs us to testimony provided by its expert on damages to argue that it established that its damages were reasonable. Mustang's accountant addressed in detail the amount it spent to complete the work. However, while Mustang's expert testimony proved its out-of-pocket costs, such evidence alone did not establish that the damages were reasonable and necessary. *Gossett,* 294 S.W.2d at 383. In fact, the expert was careful to limit his opinion solely to what it cost Sunland to complete the contract, and not whether that contracted amount was a reasonable cost to build a pipeline. As this Court held in *Gossett,* however, "it is now well settled that proof of the amounts charged or paid does not raise an issue of reasonableness, and recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable." *Id.* at 383.

We agree with the court of appeals' conclusion that Mustang failed to provide evidence that its out-of-pocket costs were reasonable. As the court of appeals noted, there was evidence that the contract entered into with Sunland was substantially higher than what Sunland initially bid in an attempt to obtain the job. 69 S.W.3d at 787. Additionally, evidence was presented that the wet conditions existing in February and early March, when Driver had the contract, had improved considerably by April, when Sunland took over, suggesting that the cost to complete should have been less for Sunland. Yet Mustang presented no evidence that the amount it paid to Sunland under the contract was reasonable; in fact, as the court of appeals noted, Mustang's only attempt to admit such evidence came in the form of a proposed rebuttal witness. 69 S.W.3d at 787. The trial court correctly refused to allow Mustang to call its rebuttal witness, however, reasoning that there was nothing for Mustang to rebut; Driver had released its own damages expert after Mustang failed to produce evidence on the reasonableness of its damages. We therefore hold that the trial court correctly granted Driver's motion for judgment notwithstanding the verdict on that issue.

Finally, we must consider the issue of attorney's fees in light of our decision. The trial court held a separate trial on attorney's fees and ordered that Driver recover $495,717.20 in attorney's fees for services rendered through the trial. It additionally ordered Mustang to pay $35,000 in the event of an unsuccessful appeal to the court of appeals, $15,000 if Mustang filed a petition with the Supreme Court that was not granted and $10,000 more if the petition was granted but unsuccessful.

■ A party is entitled to recover attorney's fees in addition to the amount of a valid claim based on a written contract. TEX. CIV. PRAC. & REM.CODE § 38.001 (2001). Because we hold that Driver did not have a valid claim against Mustang due to its prior material breach, we reverse the trial court's order of attorney's fees to Driver. While Mustang did have a valid claim against Driver, it was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim. *See Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997).

Accordingly, we grant Mustang's petition for review and, without hearing oral argument, affirm the court of appeals' judgment in part, reverse in part, and render judgment that Driver take nothing.