

NUMBER 13-08-00743-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ELEUTERIO FUENTES, **Appellant,**

**v.**

SAN ANASTACIO DEVELOPMENT LTD.,
OSCAR CORONA, AND MAURICIO GONZALEZ, **Appellees.**

**On appeal from the 398th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Chief Justice Valdez**

This appeal involves a dispute regarding a construction contract in which appellees, San Anastacio Development Ltd., Oscar Corona, and Mauricio Gonzalez (collectively referred to as "San Anastacio"), contracted with appellant, Eleuterio Fuentes, to construct a water distribution system, a sanitary sewer system, storm drainage, and paving and

parking lot improvements at a subdivision being developed by Fuentes. After a jury trial, judgment was rendered in favor of San Anastacio. San Anastacio was awarded $89,300 in damages and $7,000 in attorney's fees. By four issues, Fuentes contends that the trial court erred by: (1) granting judgment for San Anastacio because the jury did not make a substantial performance finding; (2) rendering judgment for Cordova and Gonzalez because "these parties did not submit a damage question"; (3) granting judgment for San Anastacio because San Anastacio "failed to meet [a] condition precedent to payment"; and (4) awarding attorney's fees. We affirm.

## I. BACKGROUND

On November 2, 2004, San Anastacio and Fuentes entered into a construction contract in which San Anastacio contracted to construct a water distribution system, a sanitary sewer system, storm drainage, and paving and parking lot improvements on the Adams Crossing Subdivision for $212,000. The contract provided that San Anastacio would complete the project within fifty working days of receiving a "notice to proceed" from the City of Mission, Texas. The contract provided, in part, "The Owner [Fuentes] agrees to pay the Contractor [San Anastacio] in current funds for the performance of the contract, as provided in the proposal, and to make payments on account thereof." The contract also provided that San Anastacio's payment requests were to be processed through Fuentes's agent, engineer Jaime Enriquez.

On July 1, 2005, San Anastacio filed suit against Fuentes for breach of contract for failing to make payments on the agreement, and Fuentes counterclaimed that San Anastacio failed to perform its obligations under the contract. A jury trial commenced on May 13, 2008. At trial, Gonzalez testified that he owns San Anastacio Development Ltd.

2

and that he and Corona, another contractor, entered into a joint venture to complete the construction project at the Adams Crossing Subdivision. Corona testified that he and Gonzalez began construction on the Adams Crossing project in mid-November 2005, and believed that they could complete the project within fifty working days of receiving the "notice to proceed" by combining their workforces.

Under the terms of the contract, San Anastacio submitted invoices to Enriquez for approval. Upon receiving the invoices, Enriquez verified that the materials represented in the invoices had been installed at the Adams Crossing Subdivision and then prepared a "certificate for payment" that was submitted to Fuentes for payment. Three certificates for payment were entered into evidence. The first certificate for payment was dated December 9, 2004, and requested payment of $61,664.85. The second certificate for payment was dated December 23, 2004, reflected that no payments had been made, and requested payment of $88,086.60. The third certificate for payment was dated January 21, 2005; it reflected a $61,664.85 payment by Fuentes, presumably in response to the December 9, 2004 request, and requested payment of $54,932.31. San Anastacio contends that it continued to perform work and incur expenses after the January 21, 2005 certificate for payment was prepared.

Fuentes testified that the contract did not require that he make any payment to San Anastacio before the completion of the Adams Crossing Project. However, Fuentes confirmed that he satisfied payment under the first certificate for payment but none thereafter. Fuentes testified that he ceased making payments because he learned that San Anastacio had failed to pay various subcontractors who had worked on the Adams Crossing project. Fuentes also testified that, after he paid the first certificate of payment,

San Anastacio had twenty-one working days left under the contract to complete the project but performed little work. Fuentes stated that, after the fifty working days under the contract expired, he allowed San Anastacio to continue working on the project for two additional months before terminating the contract in March 2005. After terminating his contract with San Anastacio, Fuentes contracted with another construction company to complete the project for approximately $70,000.

Fuentes's testimony was hotly disputed by Corona and Gonzalez. According to Corona and Gonzalez, when the parties contracted with Fuentes, they were told to turn in their requests for payment on the 25th of each month and that they would be paid on the 10th of the following month. Moreover, Enriquez opined that a provision found within the contract required Fuentes to make payments as the work progressed in accordance with the work reflected in the certificates of payment. Corona admitted that San Anastacio was unable to complete the Adams Crossing project but insisted that its failure to complete the project resulted from Fuentes's failure to make the requested payments. Corona testified that Fuentes owes San Anastacio $37,000 for work performed under Corona's portion of the San Anastacio joint venture. Additionally, Gonzalez testified that Fuentes owes San Anastacio a total of $89,300 for work performed under the contract. Gonzalez stated that the $89,300 is comprised of $37,000 for work performed under Corona's portion of the joint venture, as well as $52,000 for work performed under Gonzalez's portion.

The jury found that both San Anastacio and Fuentes failed to comply with the November 2, 2004 contract. The jury awarded $89,300 to San Anastacio after it determined that Fuentes was the first to breach the contract and that his breach was not excused. The trial court entered a final judgment providing that San Anastacio evelopment

4

Ltd., Oscar Corona, and Mauricio Gonzalez recover $89,300 in actual damages, pre- and post-judgment interest, attorney's fees, and court costs. Fuentes filed a "Motion for Judgment Notwithstanding the Verdict" and a "Motion for New Trial or in the Alternative Motion to Modify Final Judgment"; however, the trial court denied these motions. This appeal ensued.

## II. SUBSTANTIAL PERFORMANCE

By his first issue, Fuentes contends that the trial court erred in awarding damages to San Anastacio because San Anastacio failed to plead and obtain a jury finding on whether it substantially performed under the contract. "Substantial performance is a doctrine that allows breaching parties who have substantially completed their obligations to recover on a contract." *Tips v. Hartland Developers, Inc.*, 961 S.W.2d 618, 623 (Tex. App.–San Antonio 1998, no pet.). Thus, Fuentes asserts that San Anastacio's failure to obtain a jury finding on whether it substantially completed the requirements of the construction contract precludes it from collecting damages. We disagree.

In the present case, the jury found that: (1) both parties failed to comply with the construction contract; (2) Fuentes was the first party to fail to comply; and (3) Fuentes's failure to comply was not excused. Texas law permits builders to recover under construction contracts upon substantial performance, even if they have breached the building contract. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 (Tex. 1984). However, under the present facts, substantial performance is irrelevant. "In the standard contract dispute, one party cancels the contract or refuses to pay due to alleged breaches by the other; in such circumstances, jurors will often find both parties failed to comply with the contract . . . unless instructed that they must decide

5

who committed the first material breach." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004) (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex. 1981) (default by one contracting party excuses performance by the other); *see also Lake LBJ Mun. Util. Dist. v. Coulson*, 692 S.W.2d 897, 908 (Tex. App.–Austin 1985), *rev'd on other grounds*, 734 S.W.2d 649 (Tex. 1987) (suggesting disjunctive submission in such cases)). Although the jury found that both parties failed to comply with the contract, the jury's finding that Fuentes was the first to fail to comply excused San Anastacio from further performance. *See id.* at 196 ("It is a fundamental principal of contract law that when one party commits a material breach of that contract, the other party is discharged or excused from further performance."). Moreover, the jury found that damages resulted from Fuentes's breach. Accordingly, San Anastacio is not precluded from collecting damages by failing to obtain a jury finding on substantial performance, and the trial court did not err by rendering judgment in favor of San Anastacio. Fuentes's first issue is overruled.

### III. JURY CHARGE

By his second issue, Fuentes contends that the trial court erred in rendering judgment for Cordova and Gonzalez because "these parties did not submit a damage question." Fuentes argues that charge error exists because the jury was asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate SAN ANASTACIO DEVELOPMENT, LTD for its damages, if any, that resulted from ELEUTERIO FUENTES['S] failure to comply with the construction contract dated November 2, 2004?

Fuentes asserts that this question did not allow the jury to consider "the correct measure of damages."[1]

---

[1] Texas Rule of Civil Procedure 301 provides that "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict . . . ." TEX. R. CIV. P. 301. Although an argument may be made that the trial court's judgment does not conform to the jury's verdict, this issue is not raised by

6

"[A]ny complaint to a jury charge is waived unless specifically included in an objection." *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (citing TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1(a)(1)). "A party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling." *Id.* (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)). Fuentes did not object to the jury charge during trial or in any post-trial motion. We therefore conclude that Fuentes has waived his second issue. *See* TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1(a)(1); *see also In re B.L.D.*, 113 S.W.3d at 349.

## IV. CONDITION PRECEDENT

By his third issue, Fuentes contends that the trial court erred in granting judgment for San Anastacio because San Anastacio "failed to meet [a] condition precedent to payment." The contract between Fuentes and San Anastacio provides:

> Either the "Owner" [Fuentes] of [sic] the "Contractor" [San Anastacio] may terminate this agreement for any reason at any time by giving notice in writing to the other. Upon notice of termination by either party, th[e] "Contractor" shall discontinue all services in connection with this agreement. Within thirty (30) days after notice of termination, the "Contractor" shall submit an invoice showing in detail the services under this agreement to the date of termination to the "Engineer" for approval. The "Owner" shall then pay the "Contractor" as per invoice approved by the "Engineer." [Enriquez].

Fuentes alleges that he terminated the contract by letter in March 2005, and that San Anastacio's last request for payment was made on January 21, 2005. As previously discussed, the jury found that Fuentes was the first to breach the contract. Fuentes's breach excused San Anastacio from further performance. *See Mustang Pipeline Co.*, 134 S.W.3d at 196. Even if Fuentes attempted to terminate the contract by a letter presented to San Anastacio in March 2005, evidence was presented that, as of that date, Fuentes

---

Fuentes. Accordingly, we consider only whether the jury charge was erroneous. *See* TEX. R. APP. P. 47.1.

had already breached the contract. Accordingly, Fuentes's breach excused San Anastacio from submitting a final invoice. *See id.* Fuentes's third issue is overruled.

## V. PRESENTMENT

In his fourth issue, Fuentes contends that the trial court erred by awarding attorney's fees to San Anastacio because there is no evidence that San Anastacio presented its demand for attorney's fees to Fuentes as required by civil practice and remedies code section 38.002(1). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002(1) (Vernon 2008) (providing that "[t]o recover attorney's fees . . . the claimant must be represented by an attorney . . .").

A party who prevails on a breach of contract claim is entitled to recover attorney's fees for prosecution of the claim. *Id.* § 38.001 (Vernon 2008). To recover attorney's fees, a claimant must have first presented the claim to the opposing party or his agent. *Id.* § 38.002(2). The purpose of presentment is to allow the person against whom the claim is asserted an opportunity to pay a claim within thirty days after notice of the claim without incurring an obligation for attorney's fees. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). No particular form of presentment is required. *Id.* All that is necessary is an assertion of a debt or claim and a request for compliance made to the opposing party, and the party's refusal to pay. *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 168 (Tex. App.–Houston [1st Dist.] 1996, no writ). The statute is to be generously construed to promote its underlying purpose. TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (Vernon 2008).

Fuentes asserts that San Anastacio is not entitled to recover attorney's fees because "there was no evidence in the record that established that [San Anastacio] w[as]

8

represented by counsel when any request for payment was made . . . ." The plain language of section 38.002(1) requires that in order to recover attorney's fees "the claimant must be represented by an attorney"; however, it does not set forth whether or not the claimant must be represented by an attorney at the time of presentment. *Id.* § 38.002(1). Fuentes fails to cite any authority for his argument that an attorney must be employed by the claimant at the time of presentment, and we find none.[2] Construing section 38.002 generously, we cannot say on this record that the trial court erred in concluding that presentment had been satisfied so as to allow recovery of attorney's fees. Fuentes's fourth issue is overruled.

## VI. CONCLUSION

Having overruled all of Fuentes's issues on appeal, we affirm the judgment of the trial court.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of July, 2010.

---

[2] On appeal, Fuentes does not assert that San Anastacio failed to prove that: (1) it presented the claim to Fuentes; or (2) payment for the just amount owed was not "tendered before the expiration of the 30th day after the claim is presented." TEX. CIV. PRAC. & REM. CODE ANN. § 38.002(2), (3) (Vernon 2008). Accordingly, we do not reach these issues. *See* TEX. R. APP. P. 38.1, 47.1.

9