COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 STR CONSTRUCTORS, LTD. and ARCH INSURANCE COMPANY,
  
                             Appellants,
  
 v.
  
 NEWMAN TILE, INC.,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 
 
  
 No. 08-10-00210-CV
  
 Appeal from the
  
 225th
 District Court
  
 of Bexar
 County, Texas 
  
 (TC# 2005-CI-04950)
 
  
 
 


 

O
P I N I O N

In this breach-of-contract
action between STR Constructors, Ltd. (STR), a general contractor, and Newman
Tile, Inc. (NTI), a subcontractor, the trial court rendered judgment for NTI and
against STR and its insurer, Arch Insurance Co (Arch).  In six issues, STR and Arch appeal from the
trial court’s judgment, contending that the evidence is legally insufficient to
support the jury’s findings that STR breached the contract and breached it
first and to support the jury’s award of damages, quantum meruit, and attorney’s fees.[1]  Because we conclude that the evidence is
legally sufficient, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

            STR
was hired by the Northeast Independent School District (the district) to
renovate one of its middle schools.  One
of the spaces to be renovated was the school’s kitchen.[2]  As the general contractor, STR solicited bids
for the installation of tile in the kitchen. 
After reviewing the architectural plans and the specifications book, NTI
tendered its bid.  As the low bidder, NTI
was awarded the contract.

            Problems
arose between STR and NTI during the renovation of the school.  According to Harold B. Newman, owner and
president of NTI, “[t]he project was . . . far behind” at the time NTI was
scheduled to begin installing tile in the kitchen.  In Newman’s mind, the project was behind
because STR failed not only to adhere to the schedule it had created, but also
to design the schedule properly in the first place.  On the other hand, STR blamed the delays on
NTI’s failure to supply a workforce adequate and skilled enough to install the
tile properly and in a timely manner.

            Tensions
escalated when an issue surfaced concerning epoxy grout.  STR maintained that epoxy grout was required
to install the quarry tile in the kitchen and that the specification book made
this clear.  Newman disputed STR’s
contention and insisted that NTI’s bid excluded epoxy grout.  STR ordered NTI to use epoxy grout.  Under protest, NTI ordered the epoxy grout
and used it to install the quarry tile in the kitchen.  Claiming that the epoxy grout and the labor
necessary to install it were not within the scope of the contract, NTI
submitted a change order to STR seeking reimbursement.  STR never paid the change orders related to
the epoxy grout nor did it pay change orders for work performed by NTI alleged
to have been outside the scope of the contract.

            As
a courtesy, the district scheduled a walk-through of the kitchen.  At the inspection, district officials
informed Newman and representatives from STR that the kitchen, including its
tile work, would not be accepted.  In
response, STR ordered NTI to make the necessary repairs, and to do so
quickly.  Becoming increasingly
dissatisfied with one another’s expectations, the parties wrote each other
several letters outlining their respective positions.  The correspondence between the parties reveal
that STR was growing increasingly dissatisfied with the work, or lack thereof,
performed by NTI, so much so that one week after the inspection, STR informed
NTI that STR was terminating the contract. 
NTI then sued for breach of contract and quantum meruit, alleging that STR’s
mismanagement made it impossible for NTI to perform on the contract.

BREACH AND FIRST TO BREACH

 

            In its first and second issues, STR
argues that the evidence is legally insufficient to support the jury’s findings
that STR breached the contract and that STR breached the contract first.  We disagree.

Standard of Review

            To determine whether the evidence is
legally sufficient to support the jury’s findings, we review the entire record,
crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  If more than a “scintilla of evidence” exists
to support the jury’s findings, it is legally sufficient.  Id. at 822.  More than
a “scintilla of evidence” exists when the evidence supporting the finding, as a
whole, would enable reasonable and fair-minded people to differ in their
conclusions.  Id.  As the sole judge of the
weight and credibility of the evidence, the jury is entitled to resolve any
conflicts in the evidence and to choose which testimony to believe.  Id. at 819.  We
therefore assume that jurors decided questions of credibility or conflicting
evidence in favor of the verdict if they reasonably could do so.  Id. at 819, 820. 
Accordingly, we do not substitute our judgment for that of the jurors if
the evidence falls within this zone of reasonable disagreement.  City of
Keller, 168 S.W.3d at 822.

Applicable Law

            A party breaches a contract when he
fails to perform an act that he has expressly or impliedly promised to
perform.  Examination Mgmt. Svcs., Inc. v. Kersh Risk Mgmt., Inc.,
367 S.W.3d 835, 844 (Tex.App.--Dallas 2012, no
pet.).  If the breach is material, the
other party is discharged or excused from further performance.  Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d
195, 198 (Tex. 2004).  Whether a
party’s breach is so material as to render the contract unenforceable is
ordinarily a question of fact to be determined based on several factors.  Id. at 199.  Some of
these factors significant in determining whether a failure to perform is
material include:

(a)
the extent to which the injured party will be deprived of the benefit which he
reasonably expected; 

(b)
the extent to which the injured party can be adequately compensated for the
part of that benefit of which he will be deprived; 

(c)
the extent to which the party failing to perform or to offer to perform will
suffer forfeiture; 

(d)
the likelihood that the party failing to perform or to offer to perform will
cure his failure, taking account of the circumstances including any reasonable
assurances; [and] 

(e)
the extent to which the behavior of the party failing to perform or to offer to
perform comports with standards of good faith and fair dealing.

 

Mustang
Pipeline Co., Inc., 134
S.W.3d at 199, citing Restatement (Second) of Contracts § 241
(1981).

Discussion 

1. 
Wrongful Termination

NTI alleged in its
pleadings that STR breached the contract by wrongfully terminating the contract.  The
contract permitted STR, at its option, to terminate the contract “[s]hould [NTI] at any time . . . fail in any respect to prosecute the work covered by this contract with
promptness and diligence, or fail in the performance of any of the agreements
herein contained . . . .”[3]
 [Emphasis added].  One of the agreements contained in the
contract required NTI to “furnish and pay for all labor, services and materials
and perform all of the work necessary or incidentally required for the
completion of that part of the work covered by the Contract Documents . . . .”

On appeal, STR
argues that it properly exercised its right to terminate the contract because “NTI
alone breached the contract and [NTI] breached first by performing” work so
defective that it was rejected completely by the owner and architect following
their inspection of the kitchen. 
Accordingly, STR maintains that terminating the contract was not
wrongful, but in accord with the contract “and [that] [its actions] therefore
could not constitute a breach, much less a first breach.”  STR thus asserts that the terms of the contract
and the rejection of NTI’s tile work by the owner and architect “conclusively
establish that [its] termination of NTI was not a breach of the [contract].”  In essence, STR contends that it was excused
in terminating the contract because the rejection of NTI’s tile work proved
that NTI alone breached the contract by failing to prosecute the work with
promptness and diligence and to perform all of the work necessary to complete the
kitchen.

The evidence adduced at trial was legally
sufficient for the jury to conclude that STR materially breached the contract
and did so first by terminating it without cause.  Newman
testified that when NTI was
scheduled to begin installing tile in the kitchen, “[t]he project was very far
behind.”  Steven Latimer, the architect
serving as the district’s representative to the project, acknowledged that the
project fell behind schedule and remained so before the tile work began in the
kitchen.  According to Bill Frost, the
construction manager for the district, the project was behind schedule and he
attributed the delay to STR.  Newman also
testified that STR failed to adhere to the schedule that it had created to get
the project back on track and to schedule the work in the kitchen properly to
ensure its timely completion, causing further delays in the installation of the
tile.  According to Newman, the kitchen
floor was not prepared for the tile installation at the scheduled time because
STR improperly scheduled different trades to work in the kitchen while NTI was
attempting to set the tile.  As a result,
NTI had to redo its work constantly because STR permitted its employees and
employees of other subcontractors to walk over and damage the newly-installed tile.  Ray Banks, one of the tile setters employed
by NTI, testified as to his and his coworker’s frustrations in having to constantly
redo tile and grout work because other tradesmen were walking on the floor
before it had cured.  Indeed, Banks
testified that when he returned to get his tools immediately after NTI had been
terminated, he noticed that the work NTI had done the previous day had been
trampled.

This testimony constitutes
more than a scintilla of evidence that STR’s behavior not only failed to
comport with standards of good faith
and fair dealing, but also played a significant role in creating the situation that STR now
argues justified its termination of the contract – a kitchen that did not meet
the standards required by the architect and the district.

Newman furthermore testified that, within
one month of starting work in the kitchen, NTI had completed a lot of it by
“working and working and working” and “fighting [its] way through the kitchen,
getting it done, getting it down, working.” 
According to Banks, “pretty much” all of “the tile work and grout work
in [the] kitchen had been laid” when STR terminated the contract in mid-January
2005.  Frost likewise testified
that the kitchen floor was substantially complete when he inspected on behalf
of the district.  Newman testified that
although he submitted four pay applications to STR seeking approximately $40,000
as payment for the work NTI had done on the project pursuant to the contract,
STR only paid two of the applications, both for work NTI had completed before beginning
in the kitchen.  He stated that STR owed NTI approximately $20,000 under
the contract.  This testimony constitutes more than a scintilla of evidence
that NTI was deprived of at least half of the money it was owed under the contract;
a sum NTI had a reasonable expectation of receiving since it had submitted the
applications seeking payment and performed the work supporting the applications.  Likewise, this
testimony also constitutes more than a scintilla of evidence that STR would not suffer forfeiture, i.e., an unreasonable loss, because NTI
completed the work for which STR had bargained and that, given the
circumstances, it was unlikely that STR would pay NTI and thereby cure STR’s termination
of NTI.

2.  Failure to Pay

            NTI also alleged that STR breached
the contract by failing to pay NTI for the work it performed.  The
provision in the contract governing payment reads:

On
the twenty fifth day of each month Subcontractor shall present to Contractor a
statement of the work done during the preceding month, which statement, when
checked and approved by contractor, will be paid within five (5) days after
receipt of payment from Owner, providing progress of the work and payments for
labor used and material purchased by Subcontractor have been satisfactory;
provided that Contractor may, at it’s option on each
payment, retain 10%, or the percentage specified in the Contract Documents, of
each estimate until final payment, which shall be made after completion of the
work covered by this contract and written acceptance thereof by the Architect,
and full payment thereof by Owner, provided Subcontractor has furnished
evidence, if requested, that all claims for labor and materials have been paid,
and provided further that Subcontractor has complied with all the provisions of
this contract.  It is understood that
receipt of payment by Contractor from owner is a condition precedent to
contractor’s obligation to pay subcontractor for work performed.

 

On appeal, STR argues that pursuant
to the contract, “the evidence conclusively establishes that [its] obligation
to pay never arose” because the district’s refusal to pay STR for the rejected tile
work relieved it from having to pay NTI. 
STR also contends that it had no obligation to pay NTI for the rejected
work because NTI failed to comply with several contractual provisions, some of
which were conditions precedent and others express covenants, governing the
documentation NTI was required to submit in support of requests for
payment.  In particular, STR complains
that NTI did not submit, as required, certified payment and payroll affidavits,
itemized schedules of the work NTI had completed, and change orders signed by
STR.

            The
evidence presented was legally sufficient for the jury to conclude that STR
materially breached the contract and did so first by failing to pay what it owed
NTI before terminating the contract.  As
noted above, STR argues that it did not have an obligation to pay NTI because
“[it] did not receive payment for NTI’s work on the kitchen tile, which is what
pay applications #3 and #4 covered.”  It
is clear that, pursuant to the contract, payment from STR to NTI was
conditioned on payment from the district to STR.  It is also clear that the district did not
pay STR for the tile work NTI completed. 
However, the evidence establishes that STR paid two of the payment applications
submitted by NTI during the course of the project.  More importantly, there was no evidence adduced
at trial that the district had paid STR for any of the work STR’s
subcontractors had performed up to the point that the district refused to pay
STR for NTI’s tile work in the kitchen. 
The only evidence regarding any type of payment STR received from the
district was Kennedy’s and Frost’s testimony that the district eventually paid
STR for the kitchen and for entire project, including an additional amount for
extra work STR did at the district’s behest. 
There is simply no evidence that, when STR paid NTI, it did so because
it had been paid by the district for that work. 
Because STR had not been paid by the district, STR’s partial payments to
NTI were not conditioned on payment to STR by the district.  Accordingly, the jury could have reasonably
concluded that STR abandoned this contractual provision and that STR’s abandonment
constituted a waiver of the provision’s application under the contract.  See Landmark
Organization, L.P. v. Delphini Const. Co., No. 13-04-371-CV,
2005 WL 2560022, *4 (Tex.App.--Corpus Christi Oct.
13, 2005, pet. denied)(mem. op.)(rejecting
contractor’s argument that, until it received payment in full from the owner,
the “pay when paid” clause in the contract with its subcontractor prevented it
from paying interest to the subcontractor because contractor abandoned, and
therefore waived the clause by sending several payments to subcontractor
throughout the course of the construction project despite not having been paid
by the owner when it did so).

            As
noted above, STR also argues that because NTI did not comply with the
contractual obligations to submit certified payment and payroll affidavits,
itemized schedules of completed work, and change orders signed by STR, it had
no obligation to pay NTI for the work rejected by the district.  However, as with the “paid-if-paid” clause
discussed above, STR waived these contractual conditions by failing to insist
on their adherence.  Ordinarily a fact
question, waiver is the intentional relinquishment of a known right or
intentional conduct inconsistent with claiming the right and may be satisfied
by showing such conduct.  Tenneco, Inc. v. Enter. Prod. Co., 925 S.W.2d 640, 643 (Tex.
1996); Sun Exploration &
Prod. Co. v. Benton,
728 S.W.2d 35, 37 (Tex. 1987).  Here, as noted above, STR paid two of the
payment applications submitted by NTI. 
STR did so despite the fact that neither payment application had
supporting documentation attached to it, including certified payment and
payroll affidavits and itemized schedules of completed work.  As for the five change orders, it is accurate
that none was signed by STR.  However, this
was immaterial given that STR did not intend to pay any of them, as testified by
Kennedy and Brown.  In light of the
foregoing, more than a scintilla of evidence existed permitting the jury to
conclude that STR waived performance of the contractual provisions on which it
now relies.

            STR’s
first and second issues are overruled.

DAMAGES

            In its third
issue, STR argues that the jury’s award of contract damages must be reversed
because NTI’s failure to plead and obtain a jury finding on whether it
substantially performed under the contract precludes it from collecting
damages.  We disagree.

Applicable Law

            Ordinarily, a
party cannot recover damages if it breaches a contract.  Dobbins
v. Redden, 785 S.W.2d 377, 378 (Tex. 1990). 
However, under the doctrine of substantial performance, a breaching
party may recover damages if it has substantially complied with its
contractual obligations.  Tips v. Hartland Developers,
Inc., 961 S.W.2d 618, 623 (Tex.App.--San Antonio
1998, no pet.).  To recover
damages under this doctrine, a breaching party must ordinarily obtain a finding
that it substantially performed.  Vance v. My Apartment Steak House
of San Antonio, Inc., 677 S.W.2d 480, 481 (Tex.
1984).  A breaching
party, however, need not obtain a finding that it substantially performed in a
case in which both parties breach and the jury, after being instructed to
decide which party breached first, finds that the other party did and that its
breach was unexcused.  Tips, 961 S.W.2d at 623; see also Fuentes v. San Anastacio
Dev. Ltd., No. 13-08-00743-CV, 2010 WL 2967158, at *2-3 (Tex.App.--Corpus Christi July 29, 2010, no pet.)(mem. op.)(holding that because
jury found that defendant committed first material breach, plaintiff did not
have to obtain jury finding on its substantial performance); Irving Flood Control Dist. v. Calgary Inc.,
No. 05-01-01462-CV, 2002 WL 1495017, at *1-2 (Tex.App.--Dallas
July 15, 2002, no pet.)(not designated for publication)(“The
trial court’s determination that the [defendant] breached the contract first
renders whether [the plaintiff] substantially performed immaterial.”).

Discussion

            The same situation identified above exists in this case,
thus excusing NTI from having to obtain a jury finding on substantial
performance.  The jury found that:  (1) both STR and NTI materially breached the
contract; (2) STR was the first party to breach; and (3) STR’s breach was unexcused.  The jury’s finding that STR was the first
party to breach and that its breach was unexcused relieved NTI from further
performance.  See Mustang Pipeline Co. Inc., 134 S.W.3d at 196 (stating that when one party
commits a material breach of that contract, the other party is discharged or
excused from further performance).  Thus,
whether NTI substantially performed is irrelevant.  Accordingly, NTI is not precluded from recovering
damages by failing to obtain a jury finding on substantial performance, and the
trial court did not err by awarding the damages found by the jury.  See Tips,
961 S.W.2d at 623; Fuentes, 2010 WL
2967158, at *2-3; Irvin Flood Control
Dist., 2002 WL 1495017, at *1-2.  STR’s
third issue is overruled.

QUANTUM MERUIT

            In
its fourth issue, STR argues that the evidence is legally insufficient to
support recovery under quantum meruit.  STR asserts
that, as a matter of law, recovery in quantum
meruit is unavailable “where there is an express
contract provision covering the services rendered -- such rule applying equally
to construction cases.”  According to
STR, the express contract between it and NTI covered the additional services
performed by NTI, and therefore, NTI cannot recover in quantum meruit.  We disagree.

Applicable
Law

As a general rule,
a plaintiff seeking “to recover the reasonable value of services rendered or
materials supplied will be permitted to recover in quantum meruit only when there is no
express contract covering those services or materials.”  Truly
v. Austin, 744 S.W.2d 934, 936 (Tex. 1988) [Emphasis added].  “There are instances when recovery in quantum meruit
is permitted despite the existence of an express contract that covers the
subject matter of the claim.”  Id.  [Emphasis added].  In a dispute involving a contract case, such
as the one here, a breaching plaintiff may recover in quantum meruit for the reasonable value
of services less any damages suffered by the defendant.  Id. at 937.  “Central
to the contractor’s right to recover in quantum
meruit is the owner’s acceptance and retention of
the benefits arising as a direct result of the contractor’s partial
performance.”  Id.  [Emphasis added].

Discussion

The evidence was
legally sufficient to permit NTI to recover in quantum meruit.  In the section of its brief discussing this
issue, STR focuses exclusively on its argument that NTI cannot recover in quantum meruit
because the basis for recovery on that ground – work reflected in the five
change orders submitted by NTI – was within the scope of work encompassed by
the contract.  However, even if STR is
correct in its assertion, NTI was nonetheless permitted to recover in quantum meruit
if it showed that its efforts were undertaken for STR and that STR retained a
tangible product of value.  See Truly, 744 S.W.2d
at 937.  More than a scintilla of
evidence existed permitting the jury to so conclude.

            First,
as reflected in the five change orders submitted by NTI, it is indisputable
that NTI provided labor and materials for STR’s direct benefit.  In Change Order Number One, NTI requested
$544 for materials and labor used to install an additional mortar bed on the
kitchen floor, additional work for which STR on its own created a change
order.  NTI asked for approximately $301in
Change Order Number Two for purchasing and installing, at STR’s behest, blue
bullnose tile as finishing trim on a tile wall. 
In Change Order Number Three, NTI sought $14,615 for materials and labor
used in installing epoxy grout and additional tile.[4]  As with Change Order Number Two, Change Order
Number Three encompasses work performed at STR’s bidding.  NTI solicited $2,500 in Change Order Number Four
for a restocking fee levied for returning smooth tile that, according to Newman,
was chosen initially by Latimer but was rendered useless when Latimer changed
his mind and opted instead for abrasive tile. 
As reflected in Change Order Number Five, NTI sought $6,500 for working
on weekends and overtime.  Newman
testified that NTI was entitled to this money because NTI’s crews worked these
additional hours based on STR’s policy of requiring subcontractor to perform
first and bill later.  Brown corroborated
that this was STR’s policy.

Second, it is also
indisputable that STR retained a tangible product of value.  As noted above, NTI installed blue bullnose
tile on a wall and additional tile on the kitchen floor at STR’s request and
STR was prepared to pay for the material and labor NTI used in installing an
additional mortar bed in the kitchen.  As for the mistakenly-ordered smooth tile,
the jury could have reasonably concluded that STR received a tangible benefit
when NTI returned it for otherwise the tile would have gone to waste.  The same could be said of the labor costs
associated with working overtime and on weekends.  The jury could have reasonably concluded that
STR received a tangible benefit in light of STR’s policy requiring
subcontractors to do whatever was necessary to get the work done and STR’s
delays in completing the project.

Equity also supports
recovery in quantum meruit
in this case.  “To justify a recovery in quantum meruit,
the plaintiff must . . . show that the defendant has been unjustly enriched and
the plaintiff would be unjustly penalized if the defendant were permitted to
retain the benefits of the partial performance without paying anything in
return.”  Truly, 744 S.W.2d at 938 [Emphasis added].  As calculated by the jury, NTI rendered
uncompensated services worth approximately $33,000 to benefit STR, a general
contractor who received more than $5,200,000 from the district.  Although NTI breached the contract, so too
did STR and STR did so first by terminating the contract and failing to pay NTI
for its work, almost all of which was completed and which remained in place after
NTI was terminated.  STR now seeks to escape liability on a
contract it drafted by claiming that its behavior should be ignored
because a strict construction of the contract imposes no liability on it.  STR, “by [its] course of conduct, has violated
the reasonable expectations and values that permeate business transactions.”  Id.
 Accordingly, we conclude that recover in
quantum meruit
was permissible.

STR’s fourth issue
is overruled.

ATTORNEY’S FEES

            In
its fifth and sixth issues, STR challenges the award of attorney’s fees.  STR first contends that, as a matter of law,
NTI was not entitled to attorney’s fees pursuant to Chapter 38 of the Civil
Practice and Remedies Code because there was no evidence to support an award of
damages on NTI’s breach-of-contract and quantum
merit claims.   We disagree.  Chapter 38 permits recovery of attorney’s
fees in a breach-of-contract case if the litigant prevails and recovers
damages.  See Tex.Civ.Prac.&Rem.Code
Ann. § 38.001 (West 2008); MBM
Financial Corp. v. Woodlands Operating Co., L.P., 292 S.W.3d 660, 666 (Tex.
2009).  As established above, the
evidence is legally sufficient to support the jury’s finding that NTI prevailed
on its breach-of-contract claim because STR
breached the contract and did so first and to support its award of damages
based on that finding.

            In
the alternative, STR argues, and NTI concedes, that if we reduce NTI’s damages
award, we must remand NTI’s attorney’s fees for recalculation.  Because we have not reduced NTI’s damages
award, there is no need for us to address the issue.

            STR’s
fifth and sixth issues are overruled.

CONCLUSION

            Having
overruled each of STR’s six issues, we affirm the trial court’s judgment.

 

 

February 20, 2013

                                                                        GUADALUPE
RIVERA, Justice

 

Before McClure, C.J., Rivera, and Antcliff,
JJ.

Antcliff, J. (Not Participating)











[1]
For the sake of convenience and simplicity, we will refer to both Appellants as
STR throughout this opinion.





[2]
The exact size of the kitchen was never ascertained.  However, it was a large space and both
parties testified that it was at least 3,000 square feet.  According to Newman, the kitchen was “around
4,000 square feet.”  Jim Brown, STR’s
construction manager to the project, estimated that kitchen was 3,500 square
feet.





[3]
In its entirety, the paragraph in question reads:

 

Should Subcontractor at any time refuse or neglect
to supply a sufficient number of properly qualified workmen or a sufficient
quantity of materials of proper quality, or abandon the work or fail in any
respect to prosecute the work covered by this contract with promptness and
diligence, or fail in the performance of any of the agreements herein
contained, Contractor may, at its option, after forty-eight (48) hours notice to Subcontractor, provide any such labor and
materials and deduct the cost thereof from any money then due or thereafter to
become due to Subcontractor under this contract or otherwise; or Contractor
may, at its option, terminate this contract . . . .”





[4]
The jury awarded NTI $8,451.11 in quantum
meruit.  In
its brief, NTI concedes that, “[c]learly, the jury
did not consider the total price for the labor and materials in installing
epoxy grout to be part of [NTI’s] quantum meruit
damages.”  Of the sought $14,615 by NTI in Change Order Number Three, $13,695
was attributable to NTI’s purchase and installation of epoxy grout.  The remaining $920 was attributable to NTI’s
purchase and installation of the additional tile.